Eric Nielson #5327
Laura Nielson #15008
G. ERIC NIELSON & ASSOCIATES
4790 S. Holladay Blvd.
Holladay, Utah 84117
Phone: (801) 424-9088
Fax:     (801) 438-0199
ericnielson@ericnielson.com
lauranielson@ericnielson.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| JANE B. and D.S., <br><br> Plaintiffs, <br><br> vs. <br><br> THE MAXIM INTEGRATED PRODUCTS INC. WELFARE BENEFITS PLAN, <br><br> Defendant. | **COMPLAINT** <br><br> Case No. 2:23-cv-00082-HCN <br><br> Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge |

**COME NOW** Jane B. and D.S., collectively, individually, and through their undersigned counsel, complain and allege against the above-captioned defendant as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Jane B. ("Jane") is a natural person residing in Clark County, Washington. She is the mother of the minor in this case

2. Plaintiff D.S. is a resident of Worcester County, Massachusetts. As a beneficiary of his biological father's self-funded health insurance plan, the Maxim Integrated Products, Inc. Welfare Benefits Plan ("the Plan"), he received treatment at Evoke at Entrada ("Evoke"), a

1

licensed intermediate behavioral health treatment program in Santa Clara, Utah from September 1, 2020 through November 18, 2020.

3. The Plan is an employee benefit plan governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, et. seq.

4. This Court has jurisdiction over this matter and venue is appropriate pursuant to 29 U.S.C. §1132(e)(2) and 29 U.S.C. § 1391(c) because the treatment took place in the State of Utah and the appeals were written by a company located in Salt Lake City, Utah.

5. Plaintiffs seek payment of D.S.'s denied claims from September 1, 2020 through November 18, 2020 for treatment rendered at Evoke, pursuant to 29 U.S.C. §1132(a)(1)(B).

6. Plaintiffs seek injunctive relief pursuant to 29 U.S.C. §1132(a)(3) and pursuant to the Mental Health Parity and Addiction Equity Act of 2008 ("the Parity Act").

7. Plaintiffs also seek an award of prejudgment interest and attorney's fees pursuant to 29 U.S.C. §1132(g).

## FACTUAL BACKGROUND

8. D.S. has struggled with a history of mental health disorders.

9. After attempts at lower levels of care, D.S. was admitted to Evoke on September 1, 2020.

## PRE-LITIGATION PROCESS FOR D.S.' TREATMENT AT EVOKE

10. Claims were submitted to the Plan by the Plaintiffs for D.S.' treatment at Evoke.

11. On January 20, 2021, Blue Cross and Blue Shield of Texas ("BCBSTX"), the claims administrator for the Plan, sent an Explanation of Benefits ("EOB") denying D.S.' treatment at Evoke. The denial EOB stated, in part:

> This service is excluded under your Health Care Plan. Please refer to your benefit booklet for specific coverage information and exclusions under your contract.

12. On June 18, 2021, Jane submitted a Level One Member Appeal.

13. In the appeal, Jane outlined that they had certain rights under ERISA, such as (1) a full, fair, and thorough review; (2) all comments, documents, records, and other information relating to their claim; (3) the identification and credentials of any medical or vocational expert whose advised was obtained in connection with their claim (even if their advice was not relied upon in making the adverse decision); and (4) a description of any additional material or information necessary for the family to perfect their claim along with an explanation of why such information is necessary. She advised BCBSTX that is was imperative they complied with ERISA regulations.

14. Jane stated that Evoke meets the Plan's definition of Other Provider, which states, in part:

> Other Provider means a person or entity, other than a Hospital or Physician, that is licensed where required to furnish to a Participant an item of service or supply described herein as Eligible Expenses.

15. Plaintiffs further outlined that Evoke is a 24/7 outdoor behavioral health ("OBH") treatment program that is duly licensed by the State of Utah to provide intermediate mental health services to youth clients, as required by the governing Utah state regulations. In addition, Evoke is accredited by the Association for Experimental Education.

16. Jane stated that, based on Evoke's licensing, accreditation, governing state regulations, and the terms and provisions of the Plan, it is clear that D.S.' claims at Evoke meet the Plan's requiremens for reimburseable mental health care benefits.

17. Additionally, Jane outlined that D.S.' treatment at Evoke is an analogous level of care to their intermediate medical health benefits, such as skilled nursing facility services or rehabiliatative services. Under the Parity Act, BCBSTX is required to offer behavioral health benefits at parity with medical or surgical benefits.

18. The family went on to outline that BCBSTX was not applying a similar treatment limitation to mental health and substance use disorder benefits as they were to medical health benefits by denying D.S.' claims due to restrictions that did not appear to apply to medical or surgical benefits at the same level, creating a nonquantitative treatment limitation ("NQTL"). Specifically, Jane outlined that BCBSTX may be imposing a NQTL based on facility type or provider specialty.

19. Jane concluded by requesting that BCBSTX take all this information into account when reviewing the appeal. Jane also asked that, in the case of an adverse benefit determination, BCBSTX provide her a copy of all the documents under which the Plan is operated, the clinical guidelines or medical necessity guidelines utilized, and requested the mental health and substance used disorder medical necessity guidelines as well as the analogous medical and surgical medical necessity guidelines.

20. In a letter dated February 1, 2022 and addressed to Evoke, BCBSTX upheld their denial of D.S.' treatment. The denial letter stated, in part:

> Reason for denial: Services are not covered by the member's health care benefit plan for this type of provider.

21. The family exhausted their appeal rights with BCBSTX.

//
//
//

# FIRST CAUSES OF ACTION

## (Claim for Benefits Under 29 U.S.C. §1132(a)(1)(B)) and Claim for Equitable Relief Pursuant to 29 U.S.C. §1132(a))

22. ERISA imposes higher-than-marketplace standards on the Plan and other ERISA fiduciaries. It sets forth a special standard of care upon a plan fiduciary, namely that the administrator discharges all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1).

23. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials. 29 U.S.C. §1104(a)(1)(D) and §1133(2).

24. The Plan's actions or failures to act constitute a breach of its fiduciary duties to the family under 29 U.S.C. §1104 and §1133 in the following ways: 1) by failing to set forth the specific reasons for D.S.' claim denial, written in a manner calculated to be understood by the family; 2) by failing to provide a "full and fair review," as anticipated in ERISA's claims processing regulations, of the denial of the D.S.' claim; 3) by developing and relying upon internal practices and policies that improperly restricted coverage in contravention of Plaintiffs' health insurance plans, ERISA, and the Parity Act; and 4) by failing to discharge all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits.

//
//
//
//

## SECOND CAUSE OF ACTION

**(Claim for Violation of the Parity Act Under 29 U.S.C. §1132(a)(3))**

25. The Parity Act is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the Parity Act.

26. The Parity Act requires that if a group health plan provides both medical and surgical benefits as well as mental health or substance use disorder benefits, then it may not apply any "treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant ... treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification." 29 C.F.R. § 2590.712(c)(2)(i) (amended Jan. 13, 2014); *see also* IFRs Under the Parity Act, 75 Fed. Reg. at 5413.

27. The Parity Act also requires that if a plan "provides mental health or substance use disorder benefits in any classification of benefits..., mental health or substance use disorder benefits must be provided in every classification in which medical/surgical benefits are provided." 29 C.F.R. § 2590.712(c)(2)(ii).

28. Impermissible nonquantitative treatment limitations under the Parity Act include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

29. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan restricted for D.S.' treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does the Plan restrict coverage of medical/surgical conditions based on

6

medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner the Plan restricted coverage of treatment for D.S. at Evoke.

30. Specifically, the Plan's reviewers utilized internal processes and procedures that may have placed a limitation on the scope of services available for intermediate behavioral health care, while not limiting the scope of services available for intermediate medical or surgical benefits.

31. When the Plan receives claims for intermediate-level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. The Plan evaluated D.S.' mental health claims using criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

32. In this manner, the Defendant violates 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

33. The violations of the Parity Act by the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

34. A declaration that the actions of the Defendant violates the Parity Act;

35. An injunction ordering the Defendant to cease violating the Parity Act and requiring compliance with the statute;

36. An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendant to interpret and apply the terms of the Plan to ensure compliance with the Parity Act;

37. An order requiring disgorgement of funds obtained by or retained by the Defendant as a result of their violations of the Parity Act;

38. An order requiring an accounting by the Defendant of the funds wrongly withheld from participants and beneficiaries of the Plan as a result of the Defendant's violations of the Parity Act;

39. An order based on the equitable remedy of surcharge requiring the Defendant to provide payment to the Plaintiffs as make-whole relief for their loss;

40. An order equitably estopping the Defendant from denying the Plaintiffs' claims in violation of the Parity Act; and

41. An order providing restitution from the Defendant to the Plaintiffs for their loss arising out of the Defendant's violation of the Parity Act.

42. 45. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A.

43. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

## **RELIEF**

44. WHEREFORE, the Plaintiffs seek relief as follows:

45. Judgment in the total amount that is owed for D.S.' medically necessary treatment at Evoke under the terms of the Plan, plus pre- and post-judgment interest to the date of payment;

46. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

47. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

48. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 1st day of February, 2023.

G. ERIC NIELSON & ASSOCIATES

  /s/ Laura Nielson
Laura Nielson
*Attorney for Plaintiffs*